Morey et al. v. Pierce.

Reversed and remanded.

---

## Henry C. Morey et al.
## v.
## Georgiana Pierce.

1. Lease—Fraudulent representations as to sewer gas.—If fraudulent representations are made to a tenant before the execution of a lease that the premises are free from sewer gas, and he moves in and finds the premises so infected with sewer gas as to be injurious to health, it is the duty of the tenant, if he wishes to disaffirm the contract, to do so immediately and leave the premises.

2. Time for making election—Damages.—The time for the tenant to make his election is upon the discovery of the fraud. If the plaintiff by his acts affirms the lease and makes it good by election, he is not thereby debarred of his action to recover such damages as were the natural and proximate result of the fraud, if the fraud shall be proved.

3.  MEASURE OF DAMAGES.—But whether the tenant affirms or disaffirms the lease upon discovering the fraud would be material in determining the proper rule of damages. If the lease was absolutely void, a plaintiff would be entitled to recover back for all he had paid or done under it, while if he affirmed it or made it good by election, he would not necessarily be entitled to recover back the rent he had paid, or for what he had done under the lease, because it had been paid, and done in performance of a valid covenant, and he might have derived some benefit from the lease and use of the premises.

4.  EVIDENCE—AFFIRMANCE.—The fact of affirmance might be an important element as regards the question whether the plaintiff used the diligence to prevent the accumulation of damages, which the law requires in such cases.

5.  INSTRUCTION.—An instruction, which assumed the fact of fraud and misrepresentation by defendants, when the evidence, as to that fact, was conflicting, is erroneous.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.  Opinion filed December 21, 1883.

The appellee, Pierce, brought this suit against appellants, Morey & Snow, for alleged fraudulent misrepresentations as to the sanitary condition of house No. 474 Randolph street, Chicago, by means of which she was induced to sign and seal a lease for said house as lessee, May 19, 1882, for one year from that date, at the yearly rent of $684 to be paid in installments as follows: $60 at the execution of the lease for one month's rent in advance to June 19, 1882, on this latter day $24 for rent to July 1, 1882, then commencing at that date, $60 on the first day of each month during the term.

The lessor in the lease was James Gibson, and it was signed and sealed on his behalf by the defendants below, Morey & Snow, as his agents.  On the trial the plaintiff gave evidence tending to show that she negotiated for the lease with Snow in the absence of Morey; that she inquired of him whether there was any sewer gas or anything wrong with the house; that he replied, " No, there is nothing wrong except some slight outside repairs;" that upon such assurance she signed the lease, paid the first month's rent and moved into the house, May 22, 1882, for the purpose of keeping therein a boarding house, of which purpose Snow was apprised before he made such repre-

Morey et al. v. Pierce.

sentation. Evidence was given tending to show that during
the term of the tenant of the said house the previous year,
sewer gas and other bad odors, etc., had been prevalent in the
house, and that Snow knew it; but that the house had under-
gone investigation and repairs between that time and the
leasing to plaintiff for the purpose of removing such nuisances,
and that Snow was aware of such facts and had reason to be-
lieve that the object had been accomplished.

The evidence tended to show that in less than two weeks
after plaintiff took possession she discovered that the house
was seriously affected with sewer gas (and that she had had
previous experience with it in another house) ; that she soon
thereafter made complaint about it to the defendants; that it
not only continued at frequent intervals, but became more
and more offensive; that after this discovery she not only re-
mained in occupation of the house, but June 19, 1882, paid to
defendants $84, being the amount of rent in full to July 1,
1882; that although subsequently, her health, that of her hired
girl and some of her boarders became impaired and seriously
affected in consequence of the presence, as she claimed, of
sewer gas in the house, and many of her boarders left her
for that reason, she nevertheless continued in the occupation
of the house.

The evidence tends to show that she held on to the posses-
sion of the premises for a long period after she discovered the
alleged fraud. Evidence was given tending to show that
Morey & Snow were partners in the real estate business and
renting houses as agents for owners. The said lease was given
in evidence and the court at the instance of the plaintiff's
counsel gave this instruction to the jury:

" The court instructs the jury that this action is not brought
upon the contract or lease introduced in evidence in this case
but upon the alleged fraud and misrepresentations set forth
in the declaration and for the alleged loss and damage result-
ing therefrom to the plaintiff, and the jury are instructed
that the covenants contained in said lease would not be bind-
ing on the plaintiff in this case, if the jury shall believe from
the evidence and under the instructions of the court, that the

plaintiff was induced to sign said lease by the fraud and mis-
representations of the defendants as charged in the declara-
tion."

The defendants duly excepted to the giving such instruction,
and judgment having passed against them for $1,100 damages
they bring the record to this court for revision.

Messrs. ABBOTT, OLIVER & SHOWALTER, for appellants; as
to proof of damages, cited 1 Sedgwick on Damages, 7th ed.,
606, Vol. II, 557; Arnold v. Clark, 45 N. Y. 253; Drew v.
Beall, 62 Ill. 165; Flynn v. Hatton, 43 Howard's P. R. 333;
Walker v. Swayzee, 3 Abbott's P. R. 136; C. & A. R. R. Co.
v. Rice, 71 Ill. 567.

If engagements to repair were made and broken, the rem-
edy is by an action *ex contractu:* Arnold v. Clark, 45 N. Y.
253.

Messrs. MONROE & LEDDY, for appellee.

McALLISTER, P. J. The direction by the court to the jury,
that the covenants in the lease given in evidence were not
binding on the plaintiff, if the jury should believe from the
evidence that the plaintiff was induced to sign said lease by
the fraud and misrepresentations of the defendants, as charged
in the declaration, was equivalent to telling the jury that
such lease was void as to her, if she were so induced to sign
it, irrespective of subsequent circumstances. We think the
instruction was wrong and misleading.

The fraud set out in the declaration did not amount to fraud
in the execution of the instrument, but merely to a fraudu-
lent misrepresentation as to a collateral matter. Though col-
lateral it was material, and if established would have justified
her, upon discovering it, to have disaffirmed the contract, sur-
rendered the premises to the lessor, and then, if this was done
with the promptitude required by law, the contract would, as to
her, have become void. But if, on the other hand, she, after
the discovery of the fraud, omitted to disaffirm, and continued
in the occupation of the premises, the law will regard her as
having made the lease good and binding upon her by election.

There was evidence in the case tending to show that the plaintiff held the possession of the premises after she had discovered the fraud. In Allaire v. Whitney, 1 Hill. (N. Y.) 484, which was a case of alleged fraudulent misrepresentation by a lessor, the court says: "It is not necessary to deny that where a vendee or lessee takes or holds possession after he has discovered the fraud of the vendor or lessor, he shall not be allowed to rescind the contract; in other words, to say, as he always may do in the first instance, that the whole is void." The same doctrine is re-affirmed in the same case by the title of Whitney v. Allaire, 4 Denio, 554.

The position of a lessee in this respect is precisely the same as that of a vendee of real or personal property. The general rule is well stated in Mason v. Bovet, 1 Denio, 69. The court, by Beardsley, J., says: "A person who is induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of what he has advanced upon it. Fraud destroys the contract *ab initio*, and the fraudulent purchaser has no title (Chit. on Cont. 406, 678 to 681, Am. ed. of 1842). But if the party defrauded would disaffirm the contract he "must do so at the earliest practicable moment after discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject-matter of the contract and afterward rescind it." To the same effect is Hall v. Fullerton, 69 Ill. 448.

The case of Allaire v. Whitney, *supra*, is authority for the position that even if the plaintiff, by her acts, is to be held to have affirmed the lease and made it good by election, she is not thereby debarred of her action to recover such damages as were the natural and proximate result of the fraud if the fraud shall be proved. But whether she affirmed or disaffirmed the lease upon discovering the fraud would be very material in determining the proper rule of damages. If the lease was absolutely void, as the court told the jury it would be if she was induced to sign it by the fraud and misrepresentations charged, then it would follow as settled law that she would be entitled to recover back for all she had paid or done under

it; while on the other hand, if she had affirmed it or made it good by election, then she would not necessarily be entitled to recover back the rent she had paid, or for what she had done under it, because it had been paid and done in performance of a valid covenant; and she may have derived some benefit from the lease and use of the premises.

Besides, such fact of affirmance might be an important element as regards the question whether she used the diligence to prevent the accumulation of damages, which the law in such cases requires. The last clause of the instruction assumes the fact of fraud and misrepresentation by defendants when the evidence was conflicting as to that fact.

For the giving that instruction, we must reverse the judgment and remand the cause for a new trial.

Reversed and remanded.