## William P. Hock et al. v. Frederick C. Jorgeson.

### Gen. No. 13,496.

1. RESCISSION—*when cannot be made upon ground of fraud.* Rescission predicated upon a claim of fraud must be made promptly upon the discovery of the fraud or it cannot be made at all.

2. FALSE REPRESENTATIONS—*when cannot be charged as having induced execution of contract.* One who has voluntarily and knowingly covenanted that no representations as to a particular matter have been made to him, cannot subsequently charge that false representations with respect to such matter were in fact made.

3. FRAUDULENT REPRESENTATIONS—*what essential to establishment of.* In order to establish fraudulent representations which will avail at law or in equity, the representations complained of must have been made with respect to a material matter; they must not

only have been false but so known to be by the person making them at the time of so making them; they must have been relied upon and have induced the entry into the contract sought upon account thereof to be set aside.

4. LANDLORD AND TENANT—*what does not authorize rescission of lease.* Where no dispossession has taken place and none seems probable, a representation by the person executing a lease as lessor, that he was the owner of the premises demised, when in fact his wife owned the same, will not entitle the lessee to cancel in equity, it not appearing but that the person so executing the lease acted with the authority of the real owner.

Bill for cancellation of lease. Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded with directions. Opinion filed November 11, 1907.

**Statement by the Court.** Frederick C. Jorgeson, defendant in error, filed a bill against William P. Hock and his wife, Wilhelmina P. Hock, plaintiffs in error, alleging that the complainant, Jorgeson, was induced to sign and accept a certain lease, executed by William P. Hock, of certain premises in the city of Chicago, by false and fraudulent representations of William P. Hock, that he, Hock, was the owner of said premises, and that "the boiler, engine and steam pipes on said premises were in good order and repair," and praying the cancellation of the lease. The defendants filed their joint and several answer to the bill, denying all its material allegations. A replication was filed and the cause was referred to a master to take proofs and report the same to the court, with his opinion on the law and the evidence. The tenth paragraph of the master's report is as follows:

"Tenth. Master finds that the inconsistency between the representations made by Hock and the actual condition of the premises at the time, as shown, was not so serious as to entitle Jorgeson to avoid the lease on that ground after remaining in possession for more than two years. That as Jorgeson moved out and gave up possession, he can set up want of title

of said William P. Hock as defense to any action at law brought on said lease, and such defense will give him complete relief in such action at law. That Jorgeson is not entitled to maintain the bill in equity for injunction as proved for the cancellation of the lease.

"The master concludes therefore that Jorgeson has full and adequate remedy at law, and that his bill herein should be dismissed at his cost for want of equity, and the master so recommends; all of which is submitted September 19, 1906."

The complainant filed objections to the report before the master, which the master overruled, and the objections were ordered by the court to stand as exceptions. The defendants filed no objections before the master, nor exceptions in court. The cause was heard on the pleadings, the master's report and the exceptions thereto. The court found "that the material allegations of the bill of complaint are true," sustained complainant's exceptions to the master's report, and decreed that the lease in question be set aside, canceled and declared null and void, and perpetually enjoined the defendants from having judgment entered against the complainants under the power of attorney contained in the lease, and from bringing any action at law or in equity against complainant on the lease. From this decree the defendants have appealed.

P. L. O'MEARA, for plaintiffs in error.

PARKER & HAGAN, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

W. P. Hock, by written lease under seal, of date September 9, 1902, demised to F. C. Jorgeson the premises described as "the four-story and basement building located and known as numbers 208-210 West Lake street," in the city of Chicago, Cook County, Illinois, "to be occupied for the manufacture of store

and office fixtures, and for no other purpose whatever," for the term from October 1, 1902, until April 30, 1908. The rent reserved in the lease is $11,725, payable in monthly installments of $175, each in advance, upon the first to the fifth day of every month of the term. The lease is signed, "W. P. Hock," "F. C. Jorgeson," and is under seal. In and by the lease Jorgeson, the lessee, covenanted as follows:

"SECOND. That he has examined and knows the condition of said premises, and has received the same in good order and repair, except as herein otherwise specified, and that no representations as to the condition of repair thereof have been made by the party of the first part or the agent of said party, prior to or at the execution of this lease, that are not herein expressed or endorsed hereon; and that he will keep said premises in good repair, replacing all broken glass with glass of the same size and quality as that broken; and will keep said premises and appurtenances, including catch basins, vaults and adjoining alleys, in a clean and healthy condition, according to the city ordinances, and the direction of the proper public officers, during the term of this lease, at his own expense; and will, without injury to the roof, remove the snow and ice from the same when necessary, and clean the snow and ice from the sidewalks in front of said premises; and upon the termination of this lease, in any way, will yield up said premises to said party of the first part in good condition and repair (loss by fire and ordinary wear excepted), and deliver the keys at the office of Lessor."

Jorgeson now avers in his bill that he was induced by false and fraudulent representations of William P. Hock, which he believed and relied on, to accept and sign the lease. The alleged false and fraudulent representations are thus averred in the bill:

"Your orator further represents that prior to the signing of said lease, said William P. Hock represented to your orator that he, the said William P. Hock, was the owner of said four-story and basement building located at and known as 208-210 West Lake

street, Chicago, Illinois, and that the boiler, engine and steam pipes on said premises were in good order and repair, and that your orator believed said representations to be true, and signed said lease in reliance thereon."

Jorgeson testified that four or five days before September 9th, the date of the lease, he went to 212 West Lake street, where he found Mr. Hock, and told him that he was sent to look at the place by Willis & Frankenstein, a real estate firm, and asked him if the building 208-210 was his, and he said it was, and that he, Hock, took him through the building, and showed him particularly the elevators and the floors, in a general way, except the basement, which he, Jorgeson, could only see part of, as men were then putting in the cement foundation around the boiler and engine. That, September 9th, before the lease was signed, he had another conversation with Mr. Hock in which he asked him "if the boiler, engine, steam pipes and everything in the building was in first-class order, and he said it was."

Complainant Jorgeson further testified that, after he took possession under the lease, he found the steam pipes tied up with cloth and strings and whitewash all over them, so as not to be discernible to the average person, and that the boiler was defective, particularly in the blow-off pipe, which was below the surface of the cement floor; and the engine had some blow-off pipes filled up with burlaps, or cement sacks, rather, cemented over, which could not be seen till the cement floor had been removed. The boiler had a patch on the fire sheet, and was single riveted, and was partly bricked up. In the early part of May, 1904, the city ordered the boiler shut down, and would not permit it to be used till certain repairs were made, and witness made the repairs and ran the boiler at reduced pressure for about five months, till a new boiler could be put in, which Mr. Hock promised, at the office of the city inspector of boilers, he would put

in. The boiler was shut down by the city December 20, 1904, Hock having refused to put in a new one.

On cross-examination Jorgeson testified that the trouble with the steam pipes commenced in October, 1902; that he could not say just when the trouble began, as they had more or less trouble right along; that when one pipe was fixed, another would burst, and the whole thing seemed to be very flimsily constructed.

John Peterson, called by complainant, testified that he was in complainant's employ, and inspected the premises in the fall of 1902. He testified, in reference to the condition when the complainant moved into the premises, that the boiler had a patch under the fire sheet and one under the hand-hole, and the blow-off pipe didn't lead anywhere. The blow-off pipe was at the bottom of the boiler; some of the steam pipes were bursted and had a cloth wound around them and some string outside of it, and were whitewashed. The exhaust pipe was bursted and cement sacks, cemented over, were over it. The pipe lays about eighteen inches under the floor. The boiler was bricked over, and was nearly whitewashed. In the early part of 1904 two of the boiler flues were leaking.

William P. Hock testified that the negotiation in regard to the leasing occupied one or two weeks, and that the complainant went through the building and examined everything.

The complainant paid all rent due by the terms of the lease to and including the month of December, 1904, and December 24, 1904, he moved from the premises and sent the key to the defendant, William P. Hock, and it was delivered to him in his wife's presence.

We think it apparent that some of the alleged defects were discovered very soon after complainant took possession of the leased premises, and complainant's testimony and that of Peterson, his witness, shows that what he claims to have been serious defects were known to him in October, 1902. Complain-

ant was engaged in the business of manufacturing store and office fixtures, and was engaged in that business, as he testified, before he occupied the leased premises. His business required the use of such appliances as were in the leased premises, and on the hypothesis that there were so serious defects in them as he claims, it seems impossible that he should not have discovered them very soon after he took possession of the premises, if not personally, then by his engineer Clark, who he says was in his employ. Yet he continued in possession of the premises from September 9, 1902, till December 24, 1904, more than two years and three months, paying rent.

In Morey v. Pierce, 14 Ill. App. 91, the plaintiff sued for damages for alleged false and fraudulent representation that the leased premises were free from sewer gas. In less than two weeks after plaintiff took possession she discovered that the premises were seriously affected with sewer gas. She had rented the premises for one year from May 19, 1882, and after her said discovery she continued to occupy the premises, and paid the rent till July 19, 1882. The court, McAllister, P. J., delivering the opinion, say: "Fraud destroys the contract *ab initio,* and the fraudulent purchaser has no title (Chit. on Cont. 406, 678 to 681, Am. ed. of 1842). But if the party defrauded would disaffirm the contract he 'must do so at the earliest practicable moment after discovery of the cheat. This is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject-matter of the contract and afterwards rescind it.' To the same effect is Hall v. Fullerton, 69 Ill. 448." The court further say: "The position of a lessee in this respect is precisely the same as that of a vendee of real or personal property," citing cases.

Resser v. Corwin, 72 Ill. App., 625, is to the same effect. See, also, Day v. Ft. Scott Investment Co., 153 Ill. 293, 304.

We think it unnecessary to cite further authorities in support of the proposition that one who seeks to rescind or have a contract set aside for fraud, must act promptly on discovery of the fraud.

The complainant covenanted in terms "that no representations as to the condition or repair thereof, have been made by the party of the first part, or the agent of said party, prior to or at the execution of this lease, that are not herein expressed or indorsed herein." No such representations are expressed in or indorsed on the lease. There is no evidence that complainant's signature to the lease was procured by any trick or device, nor is this claimed. It must, in the absence of evidence to the contrary, be presumed that he signed the lease of his own free will, and with full knowledge of its contents. Having voluntarily and knowingly covenanted that no representation was made to him as to the condition or repair of the premises, complainant cannot, in accordance with sound reason and principle, be heard to say that such representation was made. If complainant had stated in open court, on the hearing of the cause, that no such representation was made to him by the defendant, William P. Hock, or by his agent, can it be doubted that the learned chancellor would have refused him relief on the ground of the alleged representation as to the condition of the premises? Yet the written statement, under seal, voluntarily and knowingly made, is certainly as strong evidence as would be such statement in open court by complainant. The defendants in their answer say "that said lease was made for and on behalf of the answering defendant, Wilhelmina P. Hock, who was and is the owner of the property referred to as numbers, to wit, 208 and 210 West Lake street, Chicago, Illinois."

The defendant, William Hock, had the control, management and possession of the premises for eleven years prior to the trial, which must have been with the knowledge and consent of his wife. With regard to

the signature, W. P. Hock, to the lease, the evidence is that it was written by the defendant, William P. Hock; but the initials W. P. are the initials of both the defendants and there is no evidence that Mr. Hock did not sign his wife's name by her authority. Jorgeson testified: "I asked him if that was his building numbers 208 and 210. He said it was." In view of Mr. Hock's control and possession of the building, we do not think this such a fraud as entitles complainant to relief in a court of equity, especially as complainant has not been disturbed in his possession by the owner of the paramount legal title, and there was no probability that he would ever be so disturbed.

In Leopold v. Judson, 75 Ill. 536, a decree for a mechanic's lien for the sum of $1,215.61, and that the premises should be sold, was rendered. Judson was the owner of the premises and had leased them to Leopold and others, who filed a bill against Judson, praying that he be decreed to pay the amount of the decree, and that he be enjoined from the recovery of rent. The bill was dismissed for want of equity by the Circuit Court, and the decree was affirmed on appeal, the court saying: "But whether appellee would suffer the property to be sacrificed for the small amount of the decree, it is not material, in the present aspect of the case, to conjecture; it will be time enough for appellants to complain when they have been evicted. It appears that appellee is entirely responsible, and should he suffer the property to be sold on the decree, and the sale ripen into a title, and appellants should be evicted, then, and not till that event happens, will they be in a position to invoke the aid of a court in their behalf."

Complainant, in his bill, after stating the representations above mentioned, avers: "Your orator believed said representations to be true and signed said lease in reliance thereon." Proof of this averment is essential.

In Merwin v. Arbuckle, 81 Ill. 501, the court say:

"To render a representation fraudulent, it must be false, and not only so, but the party making it must know that it is false. To recover in an action for deceit, the statement must be untrue, the party making it must know that it is false, and the person seeking to recover must have relied on the statement as true, and have been induced to act upon the statement; and the statement, to authorize a recovery, must have been in relation to a matter material to the transaction. See Wheeler v. Randall, 48 Ill. 182; Hiner v. Richter, 51 Ill. 299." The case is cited with approval in Holdom v. Ayer, 110 Ill. 448, 453.

Complainant did not testify that he believed or relied on the alleged representations of Mr. Hock, or any of them, nor is there any evidence to that effect.

The decree will be reversed and the cause remanded, with direction to dismiss the complainant's bill for want of equity.

*Reversed and remanded with direction.*